IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC | § | 2:16-cv-00329-RWS |
| *Plaintiff*, | § | LEAD CASE |
| | § | |
| v. | § | |
| VERIMATRIX, | § | JURY TRIAL DEMANDED |
| *Defendant*. | § | |
| | § | |
| | § | |
| BLUE SPIKE, LLC | § | |
| *Plaintiff*, | § | 2:16-cv-0701-RWS |
| | § | MEMBER CASE |
| v. | § | |
| MEDIA SCIENCE INCORPORATED, | § | JURY TRIAL DEMANDED |
| *Defendant*. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Blue Spike, LLC files this complaint against Media Science Incorporated

("Defendant") alleging 10 Counts of patent infringement:

1. U.S. Patent 5,889,868 titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digitized data,"

2. U.S. Patent 7,770,017 titled "Method and System for Digital Watermarking;"

3. U.S. Patent 7,877,609 titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digital data;"

4. U.S. Patent 7,913,087 titled "Optimization methods for the insertion,

protection, and detection of digital watermarks in digital data;"

5. U.S. Patent 7,953,981 titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digital data;"

6. U.S. Patent 8,121,343 titled "Optimization Methods For The Insertion, Protection, and Detection of Digital Watermarks in Digitized Data;"

7. U.S. Patent 8,161,286 titled "Method and System for Digital Watermarking;"

8. U.S. Patent 8,175,330 titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digital data;"

9. U.S. Patent 8,225,099 titled "Linear predictive coding implementation of digital watermarks;"

10. U.S. Patent 8,307,213 titled "Method and System for Digital Watermarking;" as follows:

**NATURE OF THE SUIT**

1.     This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

**PARTIES**

2.     Plaintiff Blue Spike, LLC is a Texas limited liability company and has its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703. Blue Spike, LLC is the assignee of the Patent-in-Suit, and has ownership of all substantial rights in the asserted Patents, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

3.      Media Science Incorporated is a Delaware corporation, having its principal place of business at 22150 Oxnard St., Ste. 990, Woodland Hills, CA 91367. Media Science Incorporated can be served with process through its registered agent, Corporation Service Company, located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. Defendant does business in the State of Texas and in the Eastern District of Texas.

## JURISDICTION AND VENUE

4.      This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §101 *et seq.* The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§1331, 1332, 1338(a), and 1367.

5.      The Court has personal jurisdiction over Defendants for at least four reasons: (1) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Defendant regularly does business or solicits business in the District and in Texas; (3) Defendant engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in the District and in Texas; and (4) Defendant has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.

6.      On information and belief Defendant directly infringes the patents-in-suit by monitoring and/or selling products to monitor video and/or audio content related to patrons residing in the Eastern District of Texas. For example, Defendant admits that it has at least one recording studio customer in Texas. *See* Dkt. 9, Declaration of Graham Oakes ("Oakes Decl."), at ¶ 12. Defendant also advertises itself as "the leading supplier

of watermark and copy protection to the recording industry." *See* Ex. A. Defendant integrates its infringing technology into the products and services of at least two major record labels: Warner Music and Universal Music Group. *See* Exs. B, C. These record labels and their subsidiaries have a presence in Texas. *See, e.g.,* Ex. D, E, F.

7.      Thus, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

8.      Venue is proper in this judicial district under 28 U.S.C. §§1391(b)–(c) and 1400(b) because Defendant does business in the State of Texas, Defendant has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's injury happened in the District, and Defendant is subject to personal jurisdiction in the District.

## FACTUAL BACKGROUND

9.      Protection of intellectual property is a prime concern for creators and publishers of digitized copies of copyrightable works, such as musical recordings, movies, video games, and computer software. Blue Spike founder Scott Moskowitz pioneered—and continues to invent—technology that makes such protection possible.

10.     Moskowitz is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the International Society for Optics and Photonics (SPIE). As a senior member of the IEEE, Moskowitz has peer-reviewed numerous conference papers and has submitted his own publications.

11.     Moskowitz is an inventor of more than 100 patents, including forensic watermarking, signal abstracts, data security, software watermarks, product license keys,

deep packet inspection, license code for authorized software and bandwidth securitization.

12.    The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications. The NSA made the application classified under a "secrecy order" while it investigated his pioneering innovations and their impact on national security.

13.    As an industry trailblazer, Moskowitz has been a public figure and an active author on technologies related to protecting and identifying software and multimedia content. A 1995 *New York Times* article—titled "TECHNOLOGY: DIGITAL COMMERCE; 2 plans for watermarks, which can bind proof of authorship to electronic works"—recognized Moskowitz's company as one of two leading software start-ups in this newly created field. *Forbes* also interviewed Moskowitz as an expert for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of digital watermarking and rights-management technology. He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

14.    Moskowitz has spoken to the RSA Data Security Conference, the International Financial Cryptography Association, Digital Distribution of the Music Industry, and many other organizations about the business opportunities that digital watermarking creates. Moskowitz also authored *So This Is Convergence?*, the first book of its kind about secure digital-content management. This book has been downloaded over a million times online and has sold thousands of copies in Japan, where Shogakukan published it under the name *Denshi Skashi*, literally "electronic watermark." Moskowitz was asked to author the introduction to *Multimedia Security Technologies for Digital Rights*

*Management*, a 2006 book explaining digital-rights management. Moskowitz authored a paper for the 2002 International Symposium on Information Technology, titled "What is Acceptable Quality in the Application of Digital Watermarking: Trade-offs of Security, Robustness and Quality." He also wrote an invited 2003 article titled "Bandwidth as Currency" for the *IEEE Journal*, among other publications.

15.    Moskowitz and Blue Spike continue to invent technologies that protect intellectual property from unintended use or unauthorized copying.

## THE ACCUSED PRODUCTS AND SERVICES

16.    Defendant designs, develops, employs, and/or manufactures digital watermarking technology (including, but not limited to, StudioCDN and Defendant's watermarking technology as integrated by its recording industry partners) that encodes and/or decodes watermarks contained within video content, the "Accused Products," which infringe one or more claims of the Patents-in-Suit.

17.    Defendant has not obtained a license for any of Blue Spike's patented technologies.

18.    Yet Defendant's Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit. The Accused Products have no non-infringing uses.

## COUNT 1:

## Infringement of U.S. Patent 5,889,868 titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digitized data"

19.    Blue Spike incorporates by reference the allegations in paragraphs above.

20.    The '868 Patent is valid, is enforceable, and was duly and legally issued from the United States Patent and Trademark Office.  It has a filing date of July 2, 1996.

21.     Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '868 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271. For example, Defendant directly infringes the Patents-in-Suit through its sales in this forum, joint ventures with record labels in this forum, and by putting its products into the stream of commerce with knowledge that they will reach this forum. Defendant indirectly infringes via its customers, as well as through partner record labels and their subsidiaries that directly infringe.

22.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '868 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '868 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '868 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '868 Patent under 35 U.S.C. § 271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '868 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of

the '868 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '868 Patent under 35 U.S.C. §271.

23.    For instance, the Accused Products infringe claim 15 of the '868 patent which teaches

> A method of guaranteeing watermark certificate uniqueness comprising attaching a timestamp or user identification dependent hash or message digest of watermark certificate data to the certificate.

24.    Defendant's acts of infringement of the '868 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '868 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

25.    On information and belief, the infringement of the Patent-in-Suit by Defendant has been willful and continues to be willful. Defendant had knowledge of the Patent-in-Suit, including but not limited to at least one or more of the following:

a.    Defendant's due diligence in a freedom to operate report.

26.    On information and belief, Defendant has at least had constructive notice of the '868 Patent by operation of law.

## COUNT 2:

## Infringement of U.S. Patent 7,770,017 titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digitized data"

27.    Blue Spike incorporates by reference the allegations in paragraphs above.

28.     The '017 Patent is valid, is enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '017 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271. For example, Defendant directly infringes the Patents-in-Suit through its sales in this forum, joint ventures with record labels in this forum, and by putting its products into the stream of commerce with knowledge that they will reach this forum. Defendant indirectly infringes via its customers, as well as through partner record labels and their subsidiaries that directly infringe.

29.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '017 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '017 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '017 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '017 Patent under 35 U.S.C. § 271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users

of the Accused Products. Defendant had knowledge of the '017 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '017 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '017 Patent under 35 U.S.C. §271.

30.     For instance, the Accused Products infringe claim 13 of the '017 Patent which teaches

> A system for authorizing content comprising:
>   a receiver to receive a potentially watermarked signal;
>   a selector to select a portion of the potentially watermarked signal to detect a digital watermark; and,
>   a processor to determine the contents of the detected digital watermark with a key comprising at least one access privilege to the contents of the detected digital watermark.

31.     Defendant's acts of infringement of the '017 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '017 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

32.     On information and belief, the infringement of the Patent-in-Suit by Defendant has been willful and continues to be willful. Defendant had knowledge of the Patent-in-Suit, including but not limited to at least one or more of the following:

        a.      Defendant's due diligence in a freedom to operate report.

33.     On information and belief, Defendant has at least had constructive notice of the '017 Patent by operation of law.

**COUNT 3:**

**Infringement of U.S. Patent 7,877,609 titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digital data"**

34.    Blue Spike incorporates by reference the allegations in paragraphs above.

35.    The '609 Patent is valid, is enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '609 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271. For example, Defendant directly infringes the Patents-in-Suit through its sales in this forum, joint ventures with record labels in this forum, and by putting its products into the stream of commerce with knowledge that they will reach this forum. Defendant indirectly infringes via its customers, as well as through partner record labels and their subsidiaries that directly infringe.

36.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '609 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '609 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are

for use in systems that infringe the '609 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '609 Patent under 35 U.S.C. § 271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '609 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '609 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '609 Patent under 35 U.S.C. §271.

37.     For instance, the Accused Products infringe claim 1 of the '609 Patent which teaches

> A system for digital watermark encode/decode operations, comprising:
>     a CODEC database comprising a plurality of CODECs; and
>     a processor which encodes at least one watermark using at least one CODEC from the CODEC database.

38.     Defendant's acts of infringement of the '609 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '609 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

39.     On information and belief, the infringement of the Patent-in-Suit by Defendant has been willful and continues to be willful. Defendant had knowledge of the Patent-in-Suit, including but not limited to at least one or more of the following:

    a.     Defendant's due diligence in a freedom to operate report.

40.     On information and belief, Defendant has at least had constructive notice of the '609 Patent by operation of law.

## COUNT 4:

**Infringement of U.S. Patent 7,913,087 titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digital data"**

41.     Blue Spike incorporates by reference the allegations in paragraphs above.

42.     The '087 Patent is valid, is enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '087 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271. For example, Defendant directly infringes the Patents-in-Suit through its sales in this forum, joint ventures with record labels in this forum, and by putting its products into the stream of commerce with knowledge that they will reach this forum. Defendant indirectly infringes via its customers, as well as through partner record labels and their subsidiaries that directly infringe.

43.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '087 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one

or more claims of the '087 Patent. Such products include, without limitation, one or more

of the Accused Products. Such products have no substantial non-infringing uses and are

for use in systems that infringe the '087 Patent. By making, using, importing offering for

sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue

Spike for infringement of the '087 Patent under 35 U.S.C. § 271. Those whom Defendant

induces to infringe and/or to whose infringement Defendant contributes are the end users

of the Accused Products. Defendant had knowledge of the '087 Patent at least as early as

the service of this complaint and is thus liable for infringement of one or more claims of

the '087 Patent by actively inducing infringement and/or is liable as contributory

infringer of one or more claims of the '087 Patent under 35 U.S.C. §271.

44.     For instance, the Accused Products infringe claim 11 of the '087 Patent which

teaches

> A system for decoding at least a portion of a digital
> watermark using a digital filter and at least one key
> comprising:
>> a processor for identifying at least one change to the
>> digital signal that will be affected by the digital
>> filter and at least one key for determining at least
>> one embedding location;
>> and a decoder for decoding at least a portion of the
>> digital watermark based on the at least one
>> identified change to the digital signal and the
>> embedding location determined by said at least one
>> key.

45.     Defendant's acts of infringement of the '087 Patent have caused damage to Blue

Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a

result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35

U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '087

Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

46.     On information and belief, the infringement of the Patent-in-Suit by Defendant has been willful and continues to be willful. Defendant had knowledge of the Patent-in-Suit, including but not limited to at least one or more of the following:

        a.      Defendant's due diligence in a freedom to operate report.

47.     On information and belief, Defendant has at least had constructive notice of the '087 Patent by operation of law.

## COUNT 5:

### Infringement of U.S. Patent 7,953,981 titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digital data;"

48.     Blue Spike incorporates by reference the allegations in paragraphs above.

49.     The '981 Patent is valid, is enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

50.     Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '981 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271. For example, Defendant directly infringes the Patents-in-Suit through its sales in this forum, joint ventures with record labels in this forum, and by putting its products into the stream of commerce with knowledge that they will reach this forum. Defendant indirectly infringes via its

customers, as well as through partner record labels and their subsidiaries that directly infringe.

51.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '981 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '981 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '981 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '981 Patent under 35 U.S.C. § 271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '981 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '981 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '981 Patent under 35 U.S.C. §271.

52.    For instance, the Accused Products infringe claim 1 of the '981 Patent which teaches

> An article of manufacture comprising a non-transitory machine readable medium, having thereon stored instructions adapted to be executed by a processor, which instructions when executed by a processor result in a process comprising:
> providing a watermark and a signal to be encoded;
> attaching a timestamp to the watermark; and

encoding the signal with the timestamp and the watermark.

53.     Defendant's acts of infringement of the '981 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '981 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

54.     On information and belief, the infringement of the Patent-in-Suit by Defendant has been willful and continues to be willful. Defendant had knowledge of the Patent-in-Suit, including but not limited to at least one or more of the following:

    a.     Defendant's due diligence in a freedom to operate report.

55.     On information and belief, Defendant has at least had constructive notice of the '981 Patent by operation of law.

## COUNT 6:

## Infringement of U.S. Patent 8,121,343 titled "Optimization Methods For The Insertion, Protection, and Detection of Digital Watermarks in Digitized Data"

56.     Blue Spike incorporates by reference the allegations in paragraphs above.

57.     The '343 Patent is valid, is enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

58.     Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '343 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of

17

the Accused Products, in violation of 35 U.S.C. §271. For example, Defendant directly infringes the Patents-in-Suit through its sales in this forum, joint ventures with record labels in this forum, and by putting its products into the stream of commerce with knowledge that they will reach this forum. Defendant indirectly infringes via its customers, as well as through partner record labels and their subsidiaries that directly infringe.

59.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '343 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '343 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '343 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '343 Patent under 35 U.S.C. § 271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '343 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '343 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '343 Patent under 35 U.S.C. §271.

60.     For instance, the Accused Products infringe claim 1 of the '343 Patent which teaches

> A method of detecting a watermark message comprising:
>> identifying, with a processor, signal characteristics suitable for embedding one or more bits of a watermark message within a signal;
>> using a watermarking key to detect said watermark message from the identified signal characteristics.

61.     Defendant's acts of infringement of the '343 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '343 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

62.     On information and belief, the infringement of the Patent-in-Suit by Defendant has been willful and continues to be willful. Defendant had knowledge of the Patent-in-Suit, including but not limited to at least one or more of the following:

   a.      Defendant's due diligence in a freedom to operate report.

63.     On information and belief, Defendant has at least had constructive notice of the '343 Patent by operation of law

## COUNT 7:

## Infringement of U.S. Patent 8,161,286 titled "Method and System for Digital Watermarking"

64.     Blue Spike incorporates by reference the allegations in paragraphs above.

65.     The '286 Patent is valid, is enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

66.     Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '286 Patent—directly, contributorily,

or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271. For example, Defendant directly infringes the Patents-in-Suit through its sales in this forum, joint ventures with record labels in this forum, and by putting its products into the stream of commerce with knowledge that they will reach this forum. Defendant indirectly infringes via its customers, as well as through partner record labels and their subsidiaries that directly infringe.

67.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '286 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '286 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '286 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '286 Patent under 35 U.S.C. § 271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '286 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '286 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '286 Patent under 35 U.S.C. §271.

68.     For instance, the Accused Products infringe claim 1 of the '286 Patent which teaches

> A method of decoding digital watermarks, comprising:
>     receiving a content signal encoded with a digital watermark; and
>     decoding said digital watermark from said content signal using a key that comprises information describing where in the content signal said digital watermark is encoded.

69.     Defendant's acts of infringement of the '286 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '286 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

70.     On information and belief, the infringement of the Patent-in-Suit by Defendant has been willful and continues to be willful. Defendant had knowledge of the Patent-in-Suit, including but not limited to at least one or more of the following:

        a.      Defendant's due diligence in a freedom to operate report.

71.     On information and belief, Defendant has at least had constructive notice of the '286 Patent by operation of law

## COUNT 8:

**Infringement of U.S. Patent 8,175,330 titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digital data"**

72.     Blue Spike incorporates by reference the allegations in paragraphs above.

73.     The '330 Patent is valid, is enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

74.     Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '330 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271. For example, Defendant directly infringes the Patents-in-Suit through its sales in this forum, joint ventures with record labels in this forum, and by putting its products into the stream of commerce with knowledge that they will reach this forum. Defendant indirectly infringes via its customers, as well as through partner record labels and their subsidiaries that directly infringe.

75.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '330 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '330 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '330 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '330 Patent under 35 U.S.C. § 271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users

of the Accused Products. Defendant had knowledge of the '330 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '330 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '330 Patent under 35 U.S.C. §271.

76.     For instance, the Accused Products infringe claim 1 of the '330 Patent which teaches

> An article of manufacture comprising a machine readable medium, having thereon stored instructions adapted to be executed by a processor, which instructions when executed result in a process comprising:
>> identifying locations within a digital signal which are suitable for embedding one or more bits of a watermark message; and
>> embedding said watermark message into said digital signal at said locations.

77.     Defendant's acts of infringement of the '330 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '330 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

78.     On information and belief, the infringement of the Patent-in-Suit by Defendant has been willful and continues to be willful. Defendant had knowledge of the Patent-in-Suit, including but not limited to at least one or more of the following:

a.      Defendant's due diligence in a freedom to operate report.

79.     On information and belief, Defendant has at least had constructive notice of the '330 Patent by operation of law.

## COUNT 9:

## Infringement of U.S. Patent 8,225,099 titled "Linear predictive coding implementation of digital watermarks"

80. Blue Spike incorporates by reference the allegations in paragraphs above.

81. The '099 Patent is valid, is enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

82. Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '099 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271. For example, Defendant directly infringes the Patents-in-Suit through its sales in this forum, joint ventures with record labels in this forum, and by putting its products into the stream of commerce with knowledge that they will reach this forum. Defendant indirectly infringes via its customers, as well as through partner record labels and their subsidiaries that directly infringe.

83. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '099 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '099 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are

for use in systems that infringe the '099 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '099 Patent under 35 U.S.C. § 271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '099 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '099 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '099 Patent under 35 U.S.C. §271.

84.    For instance, the Accused Products infringe claim 13 of the '099 Patent which teaches

> An article of manufacture comprising a non-transitory machine-readable medium, having thereon stored in non-transitory form instructions adapted to be executed by a processor, which instructions when executed by said processor result in a process of using linear predictive coding calculations to detect at least one of a plurality of digital watermarks from a content signal, comprising:
>> receiving a content signal;
>> using linear predictive coding calculations to analyze signal components of said digital sample stream, said signal components being characterized
>> by at least one of the following group:
>> a) a discrete series of digital samples, and
>> b) a discrete series of carrier frequency sub-bands of the content signal
>> detecting that at least one of a plurality of digital watermarks from said signal components of said content signal.

85.    Defendant's acts of infringement of the '099 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '099

Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

86. On information and belief, the infringement of the Patent-in-Suit by Defendant has been willful and continues to be willful. Defendant had knowledge of the Patent-in-Suit, including but not limited to at least one or more of the following:

        a. Defendant's due diligence in a freedom to operate report.

87. On information and belief, Defendant has at least had constructive notice of the '099 Patent by operation of law.

### COUNT 10:

### Infringement of U.S. Patent 8,307,213 titled "Method and System for Digital Watermarking"

88. Blue Spike incorporates by reference the allegations in paragraphs above.

89. The '213 Patent is valid, is enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

90. Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '213 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. §271. For example, Defendant directly infringes the Patents-in-Suit through its sales in this forum, joint ventures with record labels in this forum, and by putting its products into the stream of commerce with knowledge that they will reach this forum. Defendant indirectly infringes via its

customers, as well as through partner record labels and their subsidiaries that directly infringe.

91.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '213 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '213 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '213 Patent. By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '213 Patent under 35 U.S.C. § 271. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '213 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '213 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '213 Patent under 35 U.S.C. §271.

92.     For instance, the Accused Products infringe claim 1 of the '213 Patent which teaches

> An article of manufacture comprising a nontransitory medium having stored thereon instructions adapted to be executed by a processor, the instructions which, when executed, result in the process comprising: receiving content to be watermarked and at least one digital watermark; and watermarking the content with the received at least one digital watermark using a key comprising

> information describing where in the content the received at
> least one digital watermark is to be encoded.

93.     Defendant's acts of infringement of the '213 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. §271. Defendant's infringement of Blue Spike's exclusive rights under the '213 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

94.     On information and belief, the infringement of the Patent-in-Suit by Defendant has been willful and continues to be willful. Defendant had knowledge of the Patent-in-Suit, including but not limited to at least one or more of the following:

    a.      Defendant's due diligence in a freedom to operate report.

95.     On information and belief, Defendant has at least had constructive notice of the '213 Patent by operation of law.

## REQUEST FOR RELIEF

Blue Spike incorporates each of the allegations in paragraphs above and respectfully asks the Court to:

(a)     enter a judgment that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patent-in-Suit;

(b)     enter a judgment awarding Blue Spike all damages adequate to compensate it for Defendant's infringement of, direct or contributory, or inducement to infringe, the Patent-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)      enter a judgment awarding treble damages pursuant to 35 U.S.C. §284 for Defendant's willful infringement of one or more of the Patent-in-Suit;

(d)      issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, its directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patent-in-Suit;

(e)      enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. §285, together with prejudgment interest; and

(f)      award Blue Spike all other relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Blue Spike demands a jury trial on all issues that may be determined by a jury.


Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W Ferguson St.
Tyler, Texas 75702
Tel/Fax:  (888) 908-4400

Kirk J. Anderson
  California Bar No. 289043
**GARTEISER HONEA, PLLC**
44 North San Pedro Road
San Rafael, California 94903
Telephone:  (415) 785-3762
Facsimile:  (415) 785-3805

*Counsel for Blue Spike, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this date stamped above.

    /s/ Randall T. Garteiser
Randall T. Garteiser