**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| Blue Spike, LLC | § | |
| *Plaintiff,* | § | 2:16-cv-00329-RWS |
| | § | LEAD CASE |
| v. | § | |
| | § | |
| Verimatrix, | § | JURY TRIAL DEMANDED |
| *Defendant.* | § | |
| | § | |

---

**DEFENDANT MEDIA SCIENCE, INC.'S CLAIM CONSTRUCTION BRIEF**

Pursuant to P.R. 4-5, Defendant Media Science, Inc. ("MSI"), hereby submits its Claim Construction Brief.  This brief is responsive to plaintiff Blue Spike LLC's ("Blue Spike") Claim Construction Brief, Docket No. 145.  MSI further requests that, in conjunction with claim construction, the Court declare and enter judgment that all claims subject to claim construction are invalid as indefinite.

Defendant's motion to dismiss for lack of jurisdiction and venue is pending before the Court.  Because MSI is the sole remaining defendant in the above-captioned consolidated case, the Court's resolution of that motion could moot claim construction proceedings.  Defendant submits this brief without waiver of its objections to the Court's jurisdiction and venue.

## I.      INTRODUCTION

Should the Court allow this case to proceed on the merits, the Court must resolve two broad categories of claim construction disputes.

The first category involves the claim limitations addressed in Blue Spike's opening Claim Construction Brief.  For these limitations, Plaintiff claims that there is no claim construction dispute.  But there are in fact claim construction disputes for the Court to resolve.  Once the

1

Court resolves those disputes, it can resolve the final question of indefiniteness, which turns on claim construction.

Fortunately for the Court, the claim construction dispute is similar for each limitation in the first category.  For each of these limitations Plaintiff has offered the same construction, which is that each limitation should be construed as having a "plain meaning" and does not need further construction.   That is another way of saying Plaintiff believes the jury could understand the meaning of each limitation without any assistance from the Court.  According to Plaintiff, the claim language speaks for itself.

MSI contends, on the other hand, that none of the limitations at issue has a plain meaning apparent to laymen.  Each limitation is, or includes, technical language or phrasing that would have to be defined for the jury to understand the metes and bounds of the patent claim.  Claims must be construed from the perspective of a person of ordinary skill in the art, but that perspective could not be understood by a juror without explanation.  Plaintiff does not and cannot propose any meaningful definitions for the claim language at issue – indeed none exist. They are not apparent from the relevant art, and they are not in the patents.  The claim language does not speak for itself.  It is too ambiguous to be construed.

The Court must determine, therefore, whether each of the limitations at issue has a "plain meaning" apparent to laymen.  If so, the Court need not construe the claim limitation.  The jury would be left with the "plain meaning" of the claim language, whether or not the jury could understand that language.  If, on the other hand, the claim limitation does not have a "plain meaning" apparent to laymen as MSI contends, then the Court should find that limitation is not capable of construction, and is indefinite as a matter of law.  Plaintiff has not offered any valid claim construction other than "plain meaning" and MSI contends no rational claim construction

exists.  Without a proposed claim construction from either party that could satisfy the

requirement of putting a person of ordinary skill in the art on notice of the scope of the claim, the

Court cannot construe that claim limitation.

There is, in addition, a second category of claim construction disputes not addressed in

Plaintiff's brief.  These relate to limitations in claims asserted by Plaintiff in its Complaint and

Infringement Contentions, but omitted by Plaintiff in its Preliminary Election of Claims.

Because MSI's motion to dismiss for lack of jurisdiction and venue is pending, MSI has not yet

had an opportunity to answer Plaintiff's Complaint.  In the event that MSI will be required to file

an answer, however, MSI wishes to preserve its right to seek declaratory judgment counterclaims

that these non-elected claims are invalid as indefinite.  Accordingly, MSI asks the Court to

construe these terms and determine them to be indefinite as well.  Plaintiff has refused to grant

MSI a covenant not to sue on these claims, so they remain in dispute.

## II.    THE PATENTS-IN-SUIT

The patents-in-suit[1] are part of a portfolio of related patents that have been the subject of

more than one-hundred lawsuits.  Most, but not all, were brought or litigated in Eastern District

of Texas.

The patents relate to the subject matter of digital watermarking, but it is not possible to

characterize any of the "inventions" that they purport to describe.  That is because the patents,

which share the same patent specification, do not clearly distinguish between that which the

inventor purported to invent and that which already existed in the prior art.  Unlike most patents,

which distinguish the prior art on one hand from the disclosed inventions on the other in separate

---

[1] The patents-in-suit include U.S. Patent nos. 5,889,868; 7,770,017; 7,877,609; 7,913,087; 7,953,981; 8,121,343; 8,161,286; 8,175,330; 8,225,099; and 8,307,213.  All patents may be abbreviated herein by reference to the last three numbers of the patent.  E.g., U.S. Patent no. 5,889,868 may be abbreviated as the "'868 patent."

descriptions, the patents-in-suit serve a single, blended mishmash of the prior art and the alleged inventions (assuming the latter even exist).  It is impossible, even for a skilled artisan, to determine where the prior art leaves off and the "inventions" begin.

The problem is compounded by a stream-of-consciousness writing style devoid of meaningful organization.   Not a single figure or illustration is disclosed to help the artisan of ordinary skill to understand the invention.  Much of the patent specification appears to be jargon and filler material designed to give the patents an air of technical sophistication.  At one point, for example, the patent specification describes an embodiment of the invention as "the provision of random-super-level non-subtractive dither." U.S. Patent no. 5,899,868 Col. 13:4-5.

Though few courts have reached the merits of Plaintiff's myriad claims for infringement, those that have actually reviewed the patents have found their disclosure and claims wanting. The Northern District of California, for example, has found that Plaintiff's digital watermarking claims in related patents fail to claim patentable subject matter.  *Blue Spike, LLC v. Google, Inc.*, 2015 WL 5260506 (N.D. Cal. Sept. 8, 2015), *aff'd* 2016 WL 5956746 (Fed. Cir. Oct. 14, 2016)[2]. Industry watchdogs have criticized the patents.  The Electronic Frontier Foundation has, for example, identified one of Plaintiff's digital watermarking patents as "Stupid Patent of the Month" for September, 2014.

### III.    THE CLAIM CONSTRUCTION DISPUTES

#### A.  THE APPLICABLE LAW

The general principles of the law of claim construction are set forth in Plaintiff's brief at pages 2-3.  MSI agrees with this general statement of principles.  MSI also sets forth below some

---

[2] On April 6, 2017, Blue Spike filed a petition for *certiorari* in the Supreme Court.

additional principles that apply to certain claim construction disputes for limitations not addressed in Plaintiff's brief.

MSI does not agree with Plaintiff's characterization of a person of ordinary skill in the art (Plaintiff does not even define the relevant art), but the differences between the parties as to the level of ordinary skill in the relevant art does not appear to be material to any claim construction dispute.  For purposes of claim construction only, the Court may assume that the level ordinary skill is similar to that described by Plaintiff.

### B.  LIMITATIONS ADDRESSED IN PLAINTIFF'S BRIEF

As noted in the Introduction, all of the claim limitations addressed in Plaintiff's brief involve substantially the same dispute.  Plaintiff contends each limitation has a plain meaning and does not require any claim construction.  MSI contends, on the other hand, that the technical terms of the claims do not have plain meanings and, lacking any meaningful claim construction proposals, cannot be construed at all.

### 1.  "watermark message" ('868 Patent claim 9)

**Plaintiff's Proposed Construction:  Plain meaning**

**MSI's Proposed Construction:  No construction possible**

"Watermark message" is a technical term whose meaning to a person of ordinary skill in the art would not readily be understood by a juror.  Thus, the metes and bounds of each patent claim including this limitation cannot be understood unless the technical language is given a meaningful definition.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*).  To leave this limitation undefined and to charge the jury to apply the "plain meaning" of the limitation would only lead to juror confusion.

In fact, the term "watermark message" cannot be defined in a way that would put a person of ordinary skill in the art on notice of the metes and bounds of this claim limitation. There is no valid technical definition of this term.  It is not used in the common parlance of persons of ordinary skill in the art, it is not defined in any technical dictionary known to the parties, and it is not defined by the patent document itself.

Plaintiff provides no evidence that "watermark message" is language commonly used by persons of ordinary skill in the art.  Plaintiff produced hundreds of pages of definitions from technical dictionaries that it alleges would be used by persons of ordinary skill in the art, yet Plaintiff cannot point to a single technical dictionary definition of this term.  Plaintiff cites a general definition of the term "watermark," but it is not helpful to determine what a "watermark message" is, especially in the context of the patents-in-suit.  This definition would apply to non-digital watermarks, as well, to which the patents-in-suit expressly do not pertain.  *See, e.g.* U.S. Patent no. 5,889,868 Abstract (describing subject matter of the invention as "digital" watermarks).

Nor does the Declaration of Dr. Papakonstantinou (Exhibit A to Plaintiff's Claim Construction Brief) address how or whether persons of ordinary skill in the art commonly use this language outside of the patents-in-suit.  Dr. Papakonstantinou's analysis is limited to the usage of the term in the patent specifications themselves.  Indeed, Dr. Papakonstantinou's declaration makes clear that the language "watermark message" does ***not*** have a plain meaning that would be apparent to laymen.  If the language does have a plain meaning—a meaning apparent on the face of the language itself without further explanation—there would be no need to explain the meaning of the term at all, as Dr. Papakonstantinou attempts to do.

The patent specifications do not define this term either.  Of course, a patentee may "be his own lexicographer."  *See Phillips*, 415 F.3d  at 1316.  In that case, however, the patent specification must provide a definition of the relevant term.  Where, as here, the claim language is not used in common parlance and therefore does not have a plain meaning, it is incumbent on the patentee to provide a sufficiently definite definition.  The specifications of the patent-in-suit, and in particular U.S. Patent no. 5,889,868, fail to apprise skilled artisans of any workable definition.

Dr. Papakonstantinou's reading of the patent specification to define a "watermark message" as "the watermark information encoded within a digital signal" does not solve the problem.

It is unclear from where Dr. Papakonstantinou adopted this proposed definition.  Dr. Papakonstantinou cites some portions of the patent specification, but not a single one of these passages offers an explicit or implicit definition of a "watermark message."  At best, the specification makes generalized references to a "watermark message."  Nothing in the patent specification explains what, exactly, is included within the watermark message.  Nothing in the patent specification explains where the "watermark message" starts, or where it stops.  Not a single figure in the patent specification—there are no figures in this patent—shows the relationship of the "watermark message" to other digital information referred to in the patent specification.  Like so much language in the patents-in-suit, the patents-in-suit use the term "watermark message" as a fudge word—a word that can mean anything the patent owner wants it to mean, as needed by the dictates of litigation.

There is an additional, separate reason to disregard both Plaintiff's alternative claim construction of the "watermark message" limitation and Dr. Papakonstantinou's supporting

declaration (which is "extrinsic evidence").  Neither was disclosed to MSI in Plaintiff's

Preliminary Claim Constructions as required by P.R. 4-2.  Nor were these submitted to the Court

in the parties' Joint Claim Construction Statement under P.R. 4-3.   Plaintiff did not even provide

its supporting citations to the patent specification, as required by P.R. 4-2, until it submitted its

claim construction brief.  In both its "Preliminary Claim Constructions" and in the Joint Claim

Construction Statement Plaintiff made clear that the "plain meaning" of every single claim

limitation should be applied without any further claim construction.  Plaintiff did not disclose

any alternative explanations of the "plain meanings" of the technical terms of the patents, much

less Dr. Papakonstantinou's Declaration in support of those explanations.  Virtually all of

Plaintiff's supporting claim construction argument and evidence is, therefore, untimely.

Because the term "watermark message" does not have a plain meaning that would be

apparent to laymen, and because the patentee has not provided any valid technical definition of

this term that could provide meaningful boundaries to a patent claim including this language, the

Court should find that this claim limitation cannot be construed.

**2.   "wherein the plurality of codecs is selected based on a predefined criterion comprising one of the group consisting of: robustness, imperceptibility, security, said codec's association with detection or decoding of at least one watermark, upgradability, variance of encode or decode functions, and combinations thereof" ('609 Patent claims 13 and 17 )**

**Plaintiff's Proposed Construction:  Plain meaning**

**MSI's Proposed Construction:  No construction possible**

The primary problem with this claim limitation is grammatical.  It can be read in several

different ways, but it is unclear which way is correct.  The scope of the claim changes with each

reading.

The claim language begins by requiring a selection of "one" of a group, but the members of the group are unclear.  In one reading of this limitation, there are four members of the group: 1) robustness; 2) imperceptibility; 3) security, and 4) "said codec's association with the encoding of at least one watermark, upgradability, variance of encode or decode functions and combinations thereof."  In this reading, the "combinations thereof" would refer to a sublisting of ways to associate a codec (one watermark, upgradability, variance of encode or decode functions).

In another reading of the limitation, the members of the group are six:  1) robustness, 2) imperceptibility, 3) security; 4) said codec's association with the encoding of at least one watermark, 5) upgradability, and 6) variance of encode or decode functions.  In this reading, the "combinations thereof" could refer to any combination among the six.

No matter which reading is chosen, it is unclear how the "combinations thereof" can be reconciled with the language "one of the group comprising."  Indeed, the use of the term "comprising" legally means other unclaimed elements could be included in the list, making the number of combinations theoretically infinite.  *Mars, Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1376 (Fed. Cir. 2004).

There is simply no way to parse the myriad ways to read this language.  It is guaranteed to confuse the jury no matter how construed.  And, as Plaintiff has not offered any rational way to untangle the grammatical indeterminacy of this claim limitation, there is no way left to construe it.

Plaintiff's Claim Construction Brief completely ignores the grammatical and phrasing problems, and focuses instead on individual technical terms in the claim language.  As with "digital watermark message" above, none of these technical terms has a plain meaning.  The

alternate constructions of these terms proposed by Plaintiff are neither helpful to the jury nor timely.  As explained above, these alternative constructions, the corresponding citations to the patent specification, and the supporting Declaration of Dr. Papakonstantinou were not disclosed as required by P.R. 4-2 and 4-3.

**3. "detecting and/or decoding at least one watermark from an encoded content signal" ('213 Patent claims 33-40, 42, and 44)**

**Plaintiff's Proposed Construction:  Plain meaning**

**MSI's Proposed Construction:  No construction possible**

This claim language, like "watermark message" is technical language that does not have a plain meaning.  To be understood, it would require definition, but there is no valid definition.

As an initial matter, the claim implies that there is a digital watermark.  Dr. Papakonstantinou uses the term "watermark" interchangeably with "watermark message" for purposes of this claim.  Declaration of Dr. Papakonstantinou at ¶ 13.

For all of the same reasons the "digital watermark message" cannot be construed, the same would be true for the "watermark".  That the watermark must be "detected and/or decoded" from an "encoded content signal" only exacerbates the problem.  It is impossible to determine what the "watermark" is and what its relationship to the "content signal" is.  It is entirely unclear, moreover, how more than "one" watermark would be detected or decoded from the "content signal."  Plaintiff's alternative construction and supporting evidence, including the Declaration of Dr. Papakonstantinou, are neither helpful nor timely.

**4. "wherein said separate keys are selected from a group comprising: a random key; a candidate key; a pseudo-random key; a watermark key; a watermarking key; a private key; a public key; a semiprivate key; a master framework key; and, a digital watermark key " ('213 Patent claim 36)**

**Plaintiff's Proposed Construction:  Plain meaning**

**MSI's Proposed Construction:  No construction possible**

This claim limitation presents another insoluble problem, albeit more subtle.  The claim requires that a "key" is selected from a group of keys "comprising" a list of keys.  The claim then lists a variety of key types.  By using the term "comprising," however, the list is, as a matter of law, not exhaustive.  *Mars, Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1376 (Fed. Cir. 2004).  Any key, not just the keys listed in the group identified in the claim limitation, would literally meet the "comprising" requirement.  If so, however, the "group" theoretically includes an infinite number of elements, as an infinite variety of key types is theoretically possible, but not identified.  Either it is impossible for a person of ordinary skill in the art to identify the complete group, or the claim limitation could be read to require any type of key, in which case the requirement of "selection" from a named group is redundant, meaningless and confusing.  Without rewriting this claim, there is no way to construe it.  It is insolubly ambiguous.

This is, in addition, another claim element including undefined technical terms. The alternate constructions of these terms proposed by Plaintiff are neither helpful to the jury nor timely.  As explained above, these alternative constructions, the corresponding citations to the patent specification, and the supporting Declaration of Dr. Papakonstantinou were not disclosed as required by P.R. 4-2 and 4-3.

**5.  "the key used for decoding" ('213 Patent claim 42)**

   **Plaintiff's Proposed Construction:  Plain meaning**

   **MSI's Proposed Construction:  No construction possible**

The "key used for decoding" is a requirement of asserted U.S. Patent no. 8,307,213 claim 41.  Claim 41 is a dependent claim, whose limitations supplement claim 21, the independent claim.  Independent claim 21 requires a "key comprising information describing where in the

content the received at least one digital watermark is encoded."  Setting aside claim 21's use of

ambiguous technical jargon, claim 21 unambiguously relates to the process of "watermarking"

content.  It further describes the use of a key to "watermark" content.  At most, the key would be

used to "encode" content.  There is no mention in claim 21 of a key used for decoding.   Yet

claim 41 refers to a key used for "decoding."  The limitation of claim 41 therefore lacks

"antecedent basis" and is ambiguous.  *See In re Packard*, 751 F.3d 1307, 1310 (Fed. Cir. 2014)

(affirming Patent Office finding that a claim is invalid where claim language lacks "antecedent

basis"); Manual of Patent Examining Procedure § 2173.05(e) (9th ed. November, 2015).  There is

no logical way to construe this claim limitation.  Plaintiff's brief and supporting declarations do

not even address this problem.

   **6.   "wherein the step of detecting and/or decoding .. . . is separate from the encoding
          process" ('213 Patent claim 44)**

      **Plaintiff's Proposed Construction:  Plain meaning**

      **MSI's Proposed Construction:  No construction possible**

   This limitation, found in dependent claim 44 of asserted U.S. Patent no. 8,307,213,

modifies independent claim 33, which is directed to a "process for watermarking content."  The

process appears to include, however, not only steps for "encoding" the watermark, but also

"detecting and/or decoding" the digital watermark from an "encoded content signal."  Either the

claim does not actually address the watermarking process, but addresses instead a process for

detecting a watermark that has been encoded, or the watermarking process somehow includes

detecting the watermark that has already been encoded, which would make no sense.  Standing

alone, claim 33 is ambiguous.  Claim 44, the asserted claim, does not solve the problem.  It

requires that "detecting and/or decoding" is a "separate step" from encoding.  If, as claimed, it is

a separate step, then the claim appears to address an impossibility because it would require the

process of "watermarking content" to include, at the same time, detecting and/or decoding the watermark, even though detecting and decoding having nothing to do with "watermarking" content.  By definition, "detecting and decoding" would apply to content that already has been watermarked.  This ambiguity cannot be resolved.

### C.  LIMITATIONS NOT ADDRESSED IN PLAINTIFF'S BRIEF

Plaintiff's Complaint and Infringement Allegations under P.R. 3-1 and 3-2 range over ten patents and include 40 claims.  In its Preliminary Election of Asserted Claims, Plaintiff dropped nine of these claims, eliminating four patents completely.

Despite Plaintiff's election of asserted claims, disputes remain with respect to the preliminarily dropped claims.  This case presents the unusual procedural posture in which claim construction proceedings are taking place *prior* to the defendant's filing of an Answer to the Complaint.  That is because defendant MSI's motion to dismiss for lack of jurisdiction and venue remains pending.

If the Court grants MSI's motion to dismiss prior to claim construction proceedings, the claim construction proceedings will become moot.  If, however, the Court does not address MSI's motion prior to claim construction, or denies MSI's motion, then MSI asks the Court to resolve claim construction issues for certain claims asserted by Plaintiff but not included in its Preliminary Election of Asserted Claims.  For these claims, MSI wishes to preserve its right to seek a declaratory judgment of invalidity should MSI be required to file an answer and counterclaims at some future time.  In order to preserve its right to seek a declaration of invalidity, on grounds including indefiniteness, claim construction is required.

MSI tried to reduce the claim construction disputes for the Court by asking Plaintiff to provide it a covenant not to sue on those claims previously asserted by Plaintiff but not included

13

in its Preliminary Election of Asserted Claims.  Plaintiff ignored MSI's request.  Accordingly, the only way for MSI to address the threat of the potential assertion of these claims to itself and to its customers is to preserve its right to seek a declaratory judgment of invalidity of those claims.

There are two categories of limitations not addressed in Plaintiff's brief.  The first are terms that, much like the claim terms above, were alleged by Plaintiff to have a plain meaning but do not, and in fact cannot be construed at all.  The second are "means-plus-function" claim limitations under 35 U.S.C. § 112 ¶ 6 for which the patents-in-suit do not provide sufficient structure.  Plaintiff denies these are means-plus-function claim limitations.  If, however, the Court agrees with MSI that they are means-plus-function claim limitations, the Court must find that the patents-in-suit do not provide supporting structure, as Plaintiff has not identified any such structure in the event that the Court finds the claim limitations to be governed by  35 U.S.C. § 112 ¶ 6.

### 1. Ordinary claim limitations

These claim limitations include:  1) "input sample window" ('868 Patent claim 5); 2) "abstract signal features" ('868Patent claim 5); 3) "further comprising receiving at least one of the group comprising: at least one predetermined key, a codec module, a framework architectures, a function, an algorithm, and combinations thereof" ('609 Patent claim 15); and, 4) "the key used for decoding" ('213 Patent claim 42).

The first and second are more technical terms not ordinarily used by persons of ordinary skill in the art.  They have no plain meaning and are not defined in the specification of the '868 Patent to put a person of ordinary skill in the art on notice of the metes and bounds of the claim.

The "further comprising . . ." limitation of '609 Patent claim 15 has a similar ambiguity addressed above with respect to "wherein the plurality of codecs . . ." limitation of claims 13 and 17 of the '609 Patent.  In particular, it is unclear how "combinations thereof" could apply to "receiving" the various elements of the claimed group.  It is unclear, moreover, what a "framework architectures [*sic.*]" is or how it could be "received" either alone or in combination.

The "key used for decoding" of '213 Patent claim 42 has the same ambiguity addressed above with respect to "wherein the step of detecting and/or decoding . . ." limitation of claim 44 of the '213 patent.

### 2.  "Means-plus-function" claim limitations under 35 U.S.C. § 112 ¶ 6

The Patent Statute, 35 U.S.C. § 112 ¶ 6, permits claim limitations to be written in "means-plus-function" format.  These are claim limitations that are defined in functional terms. Instead of claiming, for example, a "hammer" a patentee can claim a "means for inserting a nail into a material."

Prior to the enactment of 35 U.S.C. § 112 ¶ 6, "means-plus-function" claim limitations were not permitted.  In *Halliburton Oil Well Cementing Co. v. Walker*, 329 U.S. 1, 12 (1946), the U.S. Supreme Court held that "means-plus-function" claim limitations are indefinite, because in theory an infinite number of means can be used to perform a given function.  The infinite number of means made it too difficult for a person of ordinary skill in the art to determine the metes and bounds of the claim.

The enactment of 35 U.S.C. § 112 ¶ 6 overruled *Halliburton* and permits means-plus-function claim limitations, but with an important qualification.  Such claim limitations are limited to only those structures disclosed in the patent specification for performing the claimed function.  To construe a "means-plus-function" claim limitation, therefore, a district court must:

15

1) construe the claimed function; and, 2) identify each structure disclosed in the patent specification for performing that function.  *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1352 (Fed. Cir. 2015) (*en banc*).  Infringement is limited to those accused devices or apparatus that perform the claimed function with an identical or equivalent structure.  35 U.S.C. § 112 ¶ 6.

Before applying "means-plus-function" claim construction rules, a district court must first determine whether a claim is expressed in "means-plus-function" format.  Some claims include the traditional "means for . . ." claim language.  These are presumed to be in "means-plus-function" format, with some exceptions.  *E.g. Personalized Media Comms., LLC v. International Trade Comm'n*, 161 F.3d 696, 703-04 (Fed. Cir. 1998).

A claim limitation need not, however, use the traditional "means for . . ." language to be "means-plus-function" form.  Even if a claim does not use the word "means," if functional language is used, the claim limitation will be construed as a "means-plus-function" claim limitation if the language of the claim limitation does not itself connote sufficient structure to a person of ordinary skill in the art.  *Williamson*, 792 F.3d at 1349.  There is a presumption that a limitation lacking the word "means" is not in means-plus-function format, but that presumption is not strong.  *Id.*

Overly broad, generic nonce words do not connote sufficient structure.  Claim limitations that substitute such words for the word "means" are, therefore, construed as means-plus function limitations.  *Williamson*, 792 F.3d at 1350.  In *Williamson*, the Federal Circuit determined that a claim limitation including the language "distributed learning control module" did not connote sufficient structure and should be construed as a "means-plus-function" claim limitation. *Williamson*, 792 F.3d at 1351.

To be structural, the non-functional language of the claim must limit the claim beyond the performance of the claimed function. *See Intellectual Ventures II LLC v. BITCO General Ins. Corp.*, 2016 WL 125924 at *26 (E.D. Tex. Jan. 11, 2016).  In other words, structural language must narrow the claim limitation beyond its function.  A "black box" that can perform the function in any possible way is not sufficient structure. *Id.*  If a claim limitation is defined primarily by its function, it is a means-plus-function claim limitation. *See MobileMedia Ideas LLC v. Apple, Inc.*, 178 F. Supp. 3d 209, 218 (D. Del. 2016).

There are nine "means-plus-function" claim limitations in dispute, but the dispute in each case is essentially the same.  MSI contends that none of these limitations includes language that sufficiently connotes structure independent of function.  Each is, therefore, a "means-plus-function" claim limitation.  Plaintiff contends, on the other hand, that by the "plain meaning" of the claim language, there is sufficient structure—even though Plaintiff cannot identify what that structure is.

The nine claim limitations at issue are:

1)  "a selector for selecting a digital signal stream" ('609 claim 18)

2)  "an encoder for encoding at least one digital watermark using one of a plurality of watermark codecs" ('609" claim 18)

3)  "a decoder for decoding the at least one digital watermark using one of the plurality of watermark codecs" ('609 claim 18)

4)  "analyzer for determining locations in the signal" ('981 claims 22, 24)

5)  "watermark message generator for generating at least one watermark message" ('981 claims 22, 24)

6) "computer including processor configured to identify locations within a digital signal which are suitable for embedding one or more bits of a watermark message" ('330 patent claim 3)

7) "a selector to select a portion of the potentially watermarked signal to detect a digital watermark" ('017 claims 13-15)

8) "a processor to determine the contents of the detected digital watermark" ('017 claims 13-15)

9) "an encoder for encoding the digital watermark into one or more locations in the content" ('017 claims 13-15)

The "selector" of '609 patent claim 18 is exemplary. It is another generic nonce word that does not connote meaningful structure to a person of ordinary skill in the art. Almost any computing device can perform a "selecting" function; indeed, the "selector" of '609 patent claim 18 performs an entirely different function than the "selector" of '017 patent claims 13-15. There is no evidence that persons of ordinary skill in the art use the word "selector" to connote a known structure independent of its function. In the hundreds of pages of dictionary definitions provided by Plaintiff, none appears to define a "selector." Nor does the patent specification define "selector" structurally or in any way other than by function. A "selector" is, therefore, nothing like a "hammer" or a "screwdriver," terms that connote structure independent of their function and therefore narrow the claim. It is more like the "distributed learning control module" held to be a means-plus-function limitation in *Williamson*.

The remaining limitations are similar. The words "encoder;" "decoder;" "analyzer;" "message generator;" "computer;" and "processor" are generic words that merely substitute for the word "means." None is structural and none narrows the functional language of the relevant

claim.  Plaintiff has not pointed to any evidence suggesting that any of these terms is structural. *See, e.g.*, *Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software.* 462 F.3d 1344, 1354 (Fed. Cir. 2006) ("mechanism," "element, "device," and other "nonce" words do not connote sufficiently definite structure); *Intellectual Ventures II LLC v. BITCO General Ins. Corp.*, 2016 WL 125594 at *26 (E.D. Tex. Jan. 11, 2016) ("encryption/decryption module is generic and construed to be means-plus-function); *GoDaddy.com LLC v. RPost Comm's Ltd.,* 2016 WL 212676 at *56-57 (D. Ariz. Jan. 19, 2016) ("processor does not connote sufficient structure"); *MobileMedia Ideas LLC v.Apple, Inc.*, 178 F. Supp. 3d 209, 218  (D. Del. 2016) ("alert sound generator" does not limit the function and is therefore means-plus-function).

Once it is determined that the above limitations are means-plus-function claim limitations, it remains for the Court to construe them.  In this case, once again, the analysis is the same for each limitation.  Plaintiff has not identified *any* supporting structure in the patent specifications to support any of these claim limitations.  Indeed, there is none.   Accordingly, no matter how the "functional" language is construed, there is no structure to support each means-plus-function claim element.  The Court should find, accordingly, that for each of these limitations there is no supporting structure.

### D.  INDEFINITENESS

A patent claim must put a person of ordinary skill in the art on notice of the scope of the claim with reasonable certainty.  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2130 (2014).  A patent claim that fails to do so is indefinite and is therefore invalid under 35 U.S.C. § 112 ¶ 2.  *Id.*  Where a patent claim is too ambiguous to be capable of claim construction, it is indefinite as a matter of law.  *Icon Health & Fitness, Inc. v. Garmin Int'l, Inc.*, slip op. at 14 (Fed. Cir. Aug. 8, 2016).

A claim including a "means-plus-function" limitation is indefinite if the patent specification does not identify any structure for performing the claimed function. *Robert Bosch, LLC v. Snap-on Inc.*, 769 F.3d 1094, 1097-98 (Fed. Cir. 2014).

It follows from the law of indefiniteness that all of the claim limitations at issue, and the claims including them, are indefinite as a matter of law.  All of the claim limitations either are incapable of construction to a reasonable degree of certainty and/or include means-plus-function claim limitations for which Plaintiff has not identified any structure corresponding to function. Plaintiff has, moreover, waived its right to identify structures that support means-plus-function limitations by failing to identify them in its P.R. 4-2 and 4-3 submissions.

Because the local Patent Rules restrict the extent to which parties can raise claim construction disputes, MSI chose the above limitations for purposes of claim construction.  But these are not the only indefinite limitations.  They are merely exemplary.  Should the Court agree with MSI that the above claim limitations are indefinite, MSI reserves the right to assert that other similar limitations of the asserted patents, particularly those in claims subject to Plaintiff's Preliminary Election, also are indefinite.

## IV.    CONCLUSION

For the reasons stated above, this Court should adopt the claim constructions proposed by MSI, and enter judgment that, as a matter of law, all of the claims of the asserted patents including the claim limitations above are indefinite.


 Dated: May 17, 2017                        Respectfully Submitted,


                                            */s/ Harold L. Novick (w-permission)*
                                            Harold L. Novick

Steve Jae Youn Kim
NOVICK, KIM & LEE, PLLC
3251 Old Lee Highway, Suite 404
Fairfax, VA 22030
Phone: (703) 745-5495
Fax: (703) 563-9748
hnovick@nkllaw.com
skim@nkllaw.com


James E. Hopenfeld
SINGER/BEA LLP
601 Montgomery St., Suite 1950
San Francisco, CA 94111 Phone:
(415) 500-6080
jhopenfeld@singerbea.com

Guy N. Harrison
Attorney at Law P.O.
Box 2845 Longview,
TX 75606
Phone: (903) 758-7361
Fax: (903) 753-9557
guy@gnhlaw.com

**ATTORNEYS FOR DEFENDANT
MEDIA SCIENCE, INC.**


<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document

was served on May 17, 2017, to Plaintiff's counsel of record via e-mail.


*/s/  Guy N. Harrison*